UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

ECO-BUILT, INC.,                                   )
        Plaintiff,                             )
                            )
    vs.                                        )          1:07-cv-0155-RLY-TAB
                            )
THE NATIONAL BANK OF                        )
INDIANAPOLIS,                                    )
        Defendant.                          )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

       This matter is before the court on a motion for summary judgment filed by

Defendant, The National Bank of Indianapolis ("NBI").  Plaintiff, Eco-Built, Inc.

("Eco"), has brought a two count complaint against NBI, alleging NBI's violation of

Indiana Code § 26-1-4-302 and its conversion of funds Eco claims rightfully belonged to

it.  For the reasons explained in this entry, the court finds that summary judgment in favor

of NBI is warranted.

**Summary Judgment Standard**

       Summary judgment is appropriate when the record shows "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A

dispute about a material fact is "genuine" if the evidence is such that a reasonable trier of

1

fact could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party.  *Id.* at 255.

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A party moving for summary judgment on a claim upon which the nonmovant party bears the burden of proof at trial may discharge its burden by showing, "that is, pointing out" an absence of evidence to support the nonmovant's case.  *Id*. at 325.

### Factual Background

Eco is an Alabama based contractor who performed as a sub-contractor for REI Real Estate Services ("REI"), an Indiana company, in connection with the construction of two Marriott hotels in Louisville, Kentucky.  As a part of its work for REI,  Eco procured materials from third party suppliers, including Metro Materials (a/k/a Metro Supply) and Dale Incor.  Periodically, when REI issued a payment to Eco, it would make its check payable to Eco and the supplier jointly.  Three of those checks are the subject of this litigation.

2

NBI is REI's bank, and held its checking account.  The three checks at issue were written by REI and sent to Eco in 2004.  The first was check #10048, in the amount of $62,223.99 made payable to "ECO BUILT, INC. and METRO MATERIALS, INC."; the second was check #10428, in the amount of $33,516.00 made payable to "ECO BUILT, INC. and METRO SUPPLY"; and, the third was check #12016, in the amount of $48,958.25 made payable to "ECO BUILT, INC. and DALE INCOR."

On or about March 17, 2004, Eco obtained what it refers to as a "deposit authorization" from Metro Materials which it provided to its bank, Prime South Bank ("Prime South"), along with the first check at issue.  Only Eco actually endorsed this check for deposit to ECO's account.[1]  Prime South accepted check #10048 and the "deposit authorization," credited ECO's account and sent the check on through the Federal Reserve System's clearinghouse system to which both banks subscribed.  The "deposit authorization" did not accompany the check as it made its way through the clearinghouse process and on to NBI.  Though there was no supplier endorsement on the check, NBI honored the check and electronically sent payment to Prime South and debited REI's account.  Without important distinctions, this process was repeated for checks #10428 and #12016 later in March and April of 2004.

_____

[1]The "deposit authorization" referred to by Eco, was in the form of a letter which Eco's President had sent to Metro Materials requesting and receiving, with its return, a signature in the blank placed in a sentence which appeared at the bottom of the letter and read as follows: "I, _____, authorize Eco Built, Inc. to deposit check #10048 from REI Real Estate Service, LLC as their own."  The signature on the copy of the letter submitted by Eco is illegible, but appears to contain the last name of "Bell."

In February of 2005, NBI was contacted by REI with regard to the missing endorsements on the three checks at issue and told that the checks needed to be returned because the payee suppliers, whose endorsements were missing, had not received payment of any of the check proceeds.[2]  Utilizing the same check processing system, NBI returned the three checks to Prime South with "Other: Endorsement Not as Drawn" stamped on the face of each one.  After receiving the returned checks, Prime South debited the account of Eco, resulting in a very large overdraft position in Eco's account. Prime South returned the check proceeds to NBI, which in turn credited REI's account. Eco was forced to borrow money to cover the overdraft and is seeking damages from NBI, because it believes the bank's return of the checks was inappropriate and untimely.

## Analysis

Eco asserts two claims against NBI: Count One is a claim for "strict liability" resulting from a violation of Indiana Code § 26-1-4-302 and Count Two is a conversion claim.  In their briefs, both parties (especially Eco) waste a great deal of time discussing issues which are not germane to the resolution of the summary judgment motion, such as a "joint check agreement" entered into between REI, Eco and the suppliers and the requirements and viability of an "allonge" for purposes of a valid endorsement; they also

---

[2]Whether or not the suppliers were actually paid is an open question of fact, as Eco claims that it made payment to the suppliers.  However, Eco does not dispute that NBI was told by REI that the suppliers had not been paid and it is not a question of fact which is material to the dispute between these parties.

4

discuss theories other than those pled, such as an alleged conspiracy between REI and

NBI against Eco, and sections of the Uniform Commercial Code which have no bearing

on the claims which have actually been pled by Eco.  The court will examine only those

issues related to the claims raised by Eco in its Complaint.

Count One - Violation of Indiana Code § 26-1-4-302

     The section of the Indiana Code relied upon by Eco is taken from the UCC and

provides as follows:

> **Sec. 302**. (a) If an item is presented to and received by a payor bank, the
> bank is accountable for the amount of:
>> (1) a demand item, other than a documentary draft, whether properly
>> payable or not, if the bank, in any case in which it is not also the
>> depositary bank, retains the item beyond midnight of the banking
>> day of receipt without settling for it or, whether or not it is also the
>> depositary bank, does not pay or return the item or send notice of
>> dishonor until after its midnight deadline; or
>> (2) any other properly payable item unless, within the time allowed
>> for acceptance or payment of that item, the bank either accepts or
>> pays the item or returns it and accompanying documents.
>
> (b) The liability of a payor bank to pay an item under subsection (a) is
> subject to defenses based on breach of a presentment warranty (IC
> 26-1-4-208) or proof that the person seeking enforcement of the liability
> presented or transferred the item for the purpose of defrauding the payor
> bank.

Ind. Code § 26-1-4-302.

     By asserting this code section as a basis for its claim, Eco has confused the

obligations of the various parties involved in the issuance and payment of a check or

draft.  Simply stated, NBI, pursuant to Indiana Code § 26-1-3.1-103(a)(2), is the "drawee"

5

bank in these circumstances, owes no direct duty to the holder or person to whom the check/draft is issued. *See Condor v. Union Planters Bank, N.A.*, 384 F.3d 397, 399 (7th Cir. 2004). NBI's direct duties are to REI, for whose benefit it holds certain accounts and to whose orders or instructions it must respond. *Bell Brothers v. Bank One, Lafayette, N.A.*, 116 F.3d 1158, 1160 (7th Cir. 1997). NBI's obligation to REI to promptly act in one manner or another when presented with the check for payment, may indirectly effect Eco as payee and provide it with some recourse down or up the chain of presentation, but it creates no direct relationship or duty between NBI and Eco, and Eco has offered the court no legal precedent whatsoever to establish differently. Even if the drawee bank arbitrarily dishonors a check, the payee or holder of the draft ordinarily has no cause of action against the drawee bank. James White & Robert Summers, *Uniform Commercial Code* 5th ed., Ch. 16 § 16-6. Rather, the drawee bank is obligated only to pay the presenter once it designates its "acceptance" of the draft for payment. Ind. Code § 26-1-3.1-409.

In this instance there is no dispute that NBI paid the checks immediately upon presentment of the checks through the clearinghouse system. Whether it signed the checks when they were presented, thereby denoting its "acceptance," as that term is defined by Indiana Code § 26-1-3.1-409, is not revealed by the record, but there is no question that NBI made prompt payment to Prime South which credited Eco's account. It later revoked its payment (or acceptance) and returned the checks to Prime South for want

of proper endorsement.  Prime South did not refuse the returned checks, nor did it send them back through the clearinghouse system with the "deposit authorizations" (though it is questionable whether such "deposit authorizations" would be sufficient to constitute a valid endorsement by the suppliers) or obtain more traditional and suitable endorsements.

Eco argues that this return of the checks by NBI somehow violated NBI's obligations as the drawee bank.  However, pursuant to Indiana law, a drawee bank may recover a mistaken payment or revoke its mistaken acceptance, and thereupon the check is considered dishonored and the underlying obligation of the drawer unpaid.  Ind. Code § 26-1-3.1-418(b).  In response, Prime South could have contested the revocation, asserting as a defense its having taken the check in good faith and/or a change in position being adopted in reliance on the earlier payment, but it did not do so.  Ind. Code § 26-1-3.1-418(c).

Eco's claim, if any, would be against REI on the underlying obligation or, perhaps against Prime South.   The obligation underlying REI's issuance of the checks remains unpaid because the checks are considered dishonored.  If the checks were improperly dishonored by NBI, then REI would be the party to make a claim against NBI under Indiana Code § 26-1-4-302 or some other applicable UCC section, but there is simply no relationship between NBI and Eco.  Without knowing more about the contractual promises contained in the account agreement Eco has with Prime South, the court can only speculate as to whether Eco might have a claim against its own bank for such a

delinquent debit or the bank's failure to provide the "deposit authorizations" to NBI, but

Eco has no claim against NBI under Indiana Code § 26-1-4-302.[3]

Count Two - Conversion

Eco contends that NBI "appropriated Eco's money for its own use and benefit"

when it returned the checks and is thereby guilty of conversion.

> The elements necessary to establish a civil cause of action for conversion
> are found in the criminal conversion statute, although a plaintiff in a civil
> conversion action is required to prove those elements only by a
> preponderance of the evidence. *Anderson v. Indianapolis Indiana AAMCO
> Dealers Adver. Pool*, 678 N.E.2d 832 (Ind.Ct.App. 1997), *trans. denied*.
>
> Indiana's criminal conversion statute, Indiana Code Ann. § 35-43-4-3,
> defines conversion as the knowing or intentional exertion of unauthorized
> control over the property of another.

*McKeighen v. Daviess County Fair Board,* __ N.E.2d __, 2009 WL 5149285 at *5 (Ind.

App., Dec. 30, 2009).

NBI argues that the conversion claim fails for two reasons: (1) Eco never had a

right to the check proceeds without an appropriate endorsement and, therefore, never

owned the checks; and, (2) NBI never asserted control over the check proceeds, but

merely credited REI's account after Prime South debited Eco's account for the amount of

---

[3]At one point in its brief, Eco argues there is some ambiguity as to who the checks were to be payable to because they were addressed only to Eco and not to both payees. This argument borders on frivolity as there is hardly a requirement that addresses of both payees be included on or with a check and the issuers use of the conjunction "and" when designating the payee makes it clear that the check required both party's endorsements. *See* Ind. Code § 26-1-3.1-110.

the returned checks and electronically returned the proceeds.  Eco  never responded to this second assertion, perhaps because it is well taken.

As mentioned previously, NBI takes its direction from REI as a result of the contractual arrangement created when REI initially deposits funds with the bank.  *Bell,* 116 F.3d at 1160.  NBI did not assert its control over the funds at issue here; rather, it returned the checks at the direction of REI and credited REI's account when the proceeds were returned.  Again, REI should be the target of any action brought by Eco, not NBI.  REI owes the obligation, if any, to pay Eco for its work, and is also the party which directed the bank to revoke its payment and dishonor the check.  REI, not NBI, is asserting control over what Eco claims is its property.

**Motions to Strike**

Each of the parties filed motions to strike portions of an affidavit the other party submitted in support of its position.  NBI's motion seeks to have parts of the affidavit of Ed Travis stricken because of a lack of personal knowledge.  Eco's motion asserts the same basis for striking portions of the affidavit of NBI employee, Christopher Pierce.

First, the parties should note that Local Rule 56.1 addresses summary judgment procedure and specifically informs a practitioner in its part (f) that, collateral motions related to a pending summary judgment motion, such as motions to strike, are disfavored.  The Rule points out that disputes on admissibility of evidence can be raised and argued

9

within the summary judgment briefs.  As it turns out, the court drew nothing from the

parts of the Travis affidavit to which NBI objects.  And, with regard to Pierce's affidavit,

the only testimony the court credited was his discussion of how the check clearing

process works under the Federal Reserve System for which he is certainly qualified to

testify based on personal knowledge and observation.  Accordingly, both motions are

mooted by the court's ruling in favor of NBI on its summary judgment motion.

### Conclusion

For the reasons explicated in this entry, Defendants's Motion For Summary

Judgment (Docket # 44) is **GRANTED**.  Defendant's Motion to Strike (Docket # 50) and

Plaintiff's Motion to Strike (Docket # 53) are **DENIED AS MOOT**.  A separate final

judgment in favor of NBI shall issue forthwith.

**SO ORDERED** this 29th day of January 2010.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Thomas David Collignon
COLLIGNON & DIETRICK PC
tcollignon@cdattorneys.com

10

Linda Joy Cooley
KRIEG DEVAULT, LLP
ljc@kdlegal.com

Ryan Daniel Etter
COLLIGNON & DIETRICK, P.C.
retter@cdattorneys.com

Michael B. Knight
COLLIGNON & DIETRICK, PC
mknight@cdattorneys.com